IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 45803

RONALD EDDINGTON,

        Petitioner-Appellant,

v.

STATE OF IDAHO,

        Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

Filed: May 17, 2019

Karel A. Lehrman, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

_____

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Lynn G. Norton, District Judge.

Order denying petition for post-conviction relief, <u>affirmed</u>.

Ronald Eddington, Eagle Pass, Texas, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Ronald Eddington appeals pro se from the district court's order denying his petition for post-conviction relief. For the reasons discussed below, we affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Eddington's appeal follows this Court's remand for an evidentiary hearing on several factual issues raised in Eddington's petition for post-conviction relief. This Court previously set forth the following factual background:

> On August 9, 2013, Eddington broke into his ex-wife's home, held her at gunpoint, and threatened to kill both himself and his ex-wife. Once Eddington left the house, the ex-wife called her father, who then called the police. The State charged Eddington with second degree kidnapping pursuant to Idaho Code § 18-4503, burglary pursuant to I.C. § 18-1401, aggravated assault pursuant to I.C. § 18-905(a), and using a deadly weapon in the commission of a felony pursuant to I.C. § 19-2520. Eddington retained private counsel. Soon after

1

Eddington was charged, his mother was charged with witness intimidation, I.C. § 18-2604. The charge stemmed from a letter Eddington's mother wrote to her ex-daughter-in-law about Eddington's charges. Eddington's trial counsel then agreed to represent Eddington's mother.

*Eddington v. State*, 162 Idaho 812, 816-17, 405 P.3d 597, 601-02 (Ct. App. 2017).

Eddington pled guilty to second degree kidnapping and aggravated assault. During the sentencing hearing, the State called several witnesses, including Eddington's ex-wife. At sentencing, Eddington's trial counsel neither objected to the testimony of Eddington's ex-wife nor cross-examined her. The day after Eddington pled guilty, the State dismissed the witness intimidation charge against Eddington's mother. *Id.* at 817, 405 P.3d at 602.

Eddington filed a petition for post-conviction relief, and the district court granted the State's motion for summary dismissal of the petition in its entirety. *Id.* Eddington appealed, and this Court concluded the district court erred in summarily dismissing several of Eddington's claims of ineffective assistance of counsel. *Id.* at 824, 405 P.3d at 609. Specifically, this Court concluded there were genuine issues of material fact regarding: (1) whether trial counsel's representation of both Eddington and his mother created an actual conflict of interest; (2) whether trial counsel pressured Eddington to plead guilty; (3) whether trial counsel was ineffective for failing to cross-examine or to object to the testimony of Eddington's ex-wife at sentencing; and (4) whether trial counsel was ineffective for not listening to police audiotapes. *Id.* This Court remanded the case for an evidentiary hearing on these claims.

On remand, the parties conducted discovery and then the district court held a two-day evidentiary hearing during which Eddington, his mother, his current wife, and trial counsel testified. Thereafter, in a written decision, the district court denied Eddington's four remaining claims of ineffective assistance of counsel. Eddington timely appeals this denial.

## II.

## STANDARD OF REVIEW

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that trial counsel's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden

of showing that trial counsel's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). Where, as here, the petitioner was convicted on a guilty plea, to satisfy the prejudice element, the petitioner must show that there is a reasonable probability that, but for trial counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Plant v. State*, 143 Idaho 758, 762, 152 P.3d 629, 633 (Ct. App. 2006).

This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011). There is a strong presumption trial counsel's performance was within the acceptable range particularly as to the lack of objections, which are generally considered to fall within the realm of tactical or strategic decisions. *Giles v. State*, 125 Idaho 921, 924, 877 P.2d 365, 368 (1994). "Choosing not to bring additional attention to statements . . . does not equate to inadequate preparation, ignorance of the law, or other shortcomings." *State v. Hall*, 163 Idaho 744, 834, 419 P.3d 1042, 1132 (2018).

In order to prevail in a post-conviction proceeding, the petitioner must prove the allegations by a preponderance of the evidence. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Baxter v. State*, 149 Idaho 859, 861, 243 P.3d 675, 677 (Ct. App. 2010). When reviewing a decision denying post-conviction relief after an evidentiary hearing, this Court will not disturb the district court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the district court's province. *Dunlap*, 141 Idaho at 56, 106 P.3d at 382; *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Baxter*, 149 Idaho at 862, 243 P.3d at 678.

ANALYSIS

**A.  Trial Counsel Did Not Have an Actual Conflict of Interest**

Trial counsel jointly represented both Eddington and Eddington's mother.  Eddington argues this joint representation compromised his representation.  Whether trial counsel's joint representation was ineffective turns on whether there was an actual conflict of interest.  Joint representation is not a per se violation of a defendant's constitutional right to legal representation unburdened by conflicts of interest.  *State v. Guzman*, 126 Idaho 368, 371, 883 P.3d 726, 729 (Ct. App. 1994).  "[J]oint representation of defendants does *not* constitute ineffective assistance of counsel unless [an] *actual* conflict is demonstrated."  *Giles*, 125 Idaho at 923, 877 P.2d at 367.

An actual conflict of interest will not be presumed; rather, the petitioner must show an actual conflict.  *Guzman*, 126 Idaho at 371, 883 P.3d at 729.  Actual conflicts may include, for example, trial counsel's failure to present a defense or important evidence on the petitioner's behalf to benefit or avoid harming the jointly represented defendant.  *Giles*, 125 Idaho at 923, 877 P.2d at 367.  Once a petitioner demonstrates an actual conflict of interest, prejudice may be presumed.  *Guzman*, 126 Idaho at 371, 883 P.3d at 729.  Prejudice, however, is only presumed if trial counsel actively represented conflicting interests and an actual conflict of interest adversely affected trial counsel's performance.  *Id.*  Such a showing of an actual conflict satisfies both prongs of the *Strickland* standard, but in the absence of an actual conflict, there can be no ineffective assistance of counsel.

In support of Eddington's argument that trial counsel's joint representation created an actual conflict, Eddington points to numerous, diffuse facts including that his parents were paying for his defense; trial counsel expressed concern that the State might claim Eddington had aided and abetted his mother's witness intimidation; his presentence investigation report detailed his mother's conduct giving rise to her charge; the prosecutors communicated about the status of Eddington's case and his mother's case; his mother attended his sentencing hearing despite the existence of a "no contact order" prohibiting her from being near his ex-wife, who also attended the hearing; and his mother's charge was only dismissed after he pled guilty.  Eddington argues the inferences from these facts clearly establish that his and his mother's cases were "linked," making his guilty plea a condition of the dismissal of his mother's charge and adversely impacting his representation.

We disagree. The district court correctly concluded that Eddington had failed to show an actual conflict of interest by a preponderance of the evidence. Among other things, the district court correctly found that there were never any discussions between the prosecutors and trial counsel about Eddington's case being linked to his mother's case; there were never any plea offers made linking the two cases together; there were no discussions between Eddington and his mother to support his claim that their cases were "linked"; and Eddington never stated during sentencing that he was pleading guilty so the prosecution would dismiss his mother's case. Further, there is no evidence trial counsel was biased in favor of Eddington's mother, despite her payment of Eddington's legal fees.

Eddington's argument on appeal places significant focus on the fact that his mother's dismissal occurred *after* his guilty plea. In particular, he challenges as inaccurate the district court's finding that "it was [trial counsel] who requested [Eddington's mother's charge] be dismissed after [Eddington's] sentencing so that the No Contact Order between the [ex-wife] and [the mother] remained in place to avoid [the mother] from further upsetting the [ex-wife] before [Eddington's] sentencing." Eddington disputes this finding and argues "the State, not [trial counsel], strategically scheduled [the mother's] dismissal."

While Eddington is technically correct that it appears the State--not trial counsel--proposed the rescheduling of the dismissal, this fact does not undermine the district court's ultimate conclusion that there was no actual conflict of interest. Trial counsel testified the no-contact order protected Eddington's mother against his ex-wife making further accusations of intimidation, which protection was important because of the case's emotional nature. As this testimony shows, trial counsel's decision not to challenge the State's rescheduling of the dismissal was not the result of an actual conflict but, rather, of trial counsel's reasonable strategy.

The circumstantial facts Eddington identifies on appeal are inadequate to conclude the district court's findings are clearly erroneous. Based on these findings, the district court correctly ruled there was no actual conflict of interest. Accordingly, the district court did not err in concluding trial counsel was not ineffective because he jointly represented Eddington and his mother.

## B. Trial Counsel Listened to Police Audiotapes

A common thread in many of Eddington's arguments on appeal is that, but for his trial counsel's failure to listen to the audiotapes of the police interviewing Eddington's ex-wife, the

outcome of his case would have been different. Eddington contends these audiotapes show his ex-wife has "compassionate and supportive feelings" for him, which is "a completely different narrative" than she presented at his sentencing hearing.

Both Eddington and his trial counsel testified at the evidentiary hearing about trial counsel's review of the audiotapes. Eddington testified that, when he inquired whether trial counsel had listened to all the audiotapes, trial counsel responded Eddington's family (who was paying for his defense) "could not afford" for trial counsel to review all the audiotapes. Further, Eddington testified trial counsel had previously told Eddington trial counsel had listened to the audiotape of Eddington's interrogation but "beyond that he didn't say anything else." Meanwhile, trial counsel unequivocally testified that he "listened to all the investigative audios in the case multiple times" and that he took notes while he listened.

The district court concluded that Eddington "has not met his burden of showing that counsel was ineffective because he failed to listen to the audio recordings [of his ex-wife's] police interviews. The preponderance of the evidence is that [trial counsel] did listen to that audio and was prepared to address it at sentencing." The evidence supports this conclusion, which turns on a credibility issue. Evaluating the credibility of the testimony of Eddington and trial counsel; weighing that testimony; and drawing inferences therefrom are functions solely within the district court's province, and we decline to second-guess such matters. *See Dunlap*, 141 Idaho at 56, 106 P.3d at 382. Accordingly, the district court did not err in concluding trial counsel was not ineffective for failing to listen to the audiotapes.

## C.     Trial Counsel Did Not Pressure Eddington to Plead Guilty

Eddington contends trial counsel pressured Eddington to plead guilty. The test for determining the validity of a guilty plea is whether it is a voluntary and intelligent choice among the defendant's available alternative choices. *Lint v. State*, 145 Idaho 472, 481, 180 P.3d 511, 520 (2008). When a defendant pleads guilty based on the advice of counsel, whether the plea is voluntary depends on "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id.*

Eddington makes essentially three arguments on appeal in support of his claim that trial counsel pressured Eddington into pleading guilty; none of which is persuasive. First, Eddington asserts trial counsel pressured Eddington to plead guilty because trial counsel had an actual conflict of interest and was biased in favor of Eddington's mother. As discussed above,

6

however, the evidence does not support that an actual conflict existed; that the State conditioned its dismissal of the charge against Eddington's mother on his guilty plea; or that trial counsel was biased in favor of protecting Eddington's mother.

Second, Eddington contends that the day before the hearing to change his plea to guilty, trial counsel "raise[d] his voice," "yelled" at Eddington, and "was coercing [him] and threatening him with his mother's imprisonment and financial ruin if [he] did not plead guilty." He also contends that he was "shocked," "terrified," and had "no alternative" but to plead guilty. Trial counsel testified to the contrary that he did not recall getting angry with Eddington. The district court also noted the existence of "extensive" recorded conversations between trial counsel and Eddington in which trial counsel explained the importance of Eddington making his own decision about whether to plead guilty.

Based on this evidence, the district court rejected Eddington's assertion that trial counsel "yelled at [Eddington], got angry, told him he had to [plead guilty], and inferred his mother's case would not be dismissed [as] just incredulous" and "simply not credible." Likewise, the district court also rejected Eddington's testimony at the evidentiary hearing that he was lying under oath at the sentencing hearing about the voluntariness of his guilty plea due to pressure from his trial counsel. These findings are credibility findings within the district court's province, are supported by the evidence, and will not be disturbed on appeal.

Finally, Eddington asserts he "would have made a different decision regarding his plea" if he were "aware of the multiple contradictory and compassionate statements" his ex-wife made to the police. This argument, however, is not one Eddington alleged in his petition for relief or argued to the district court. For these reasons, we decline to address the argument. *See State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992) (noting longstanding rule not to consider arguments raised for first time on appeal).

Regardless, "the decision to plead guilty before the evidence is in frequently involves the making of difficult judgments." *McMann v. Richardson*, 397 U.S. 759, 769-70 (1970). "That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." *Id.* The district court concluded that trial counsel's advice was "competent and reasonable" and that Eddington "ultimately made up his own mind" to plead guilty. We agree; the evidence supports that Eddington's plea was knowing and voluntary.

7

**D.** **Trial Counsel Was Not Ineffective for Failing to Object to Testimony of Eddington's Ex-Wife or to Cross-Examine Her**

Eddington claims his trial counsel was ineffective for failing to object to Eddington's ex-wife's testimony or to cross-examine her at his sentencing hearing. Eddington does not identify any objections trial counsel should have made or any specific cross-examination. Eddington does, however, reference the audiotapes of his ex-wife's police interviews and his phone calls, emails and texts to her, and he suggests this information would have disputed the State's narrative that he was "an obsessive, controlling, manipulative, stalking individual who was violently abusive."

Generally, whether to object or to cross-examine a witness involves trial counsel's tactical or strategic decisions, which this Court will not second-guess on appeal unless the decisions are a result of inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales*, 151 Idaho at 172, 254 P.3d at 73. In this instance, however, trial counsel expressly acknowledged he mistakenly failed to highlight at Eddington's sentencing hearing the inconsistency between the testimony of Eddington's ex-wife about his abuse and prior information indicating Eddington had never been physically abusive.

Given trial counsel's acknowledgement of the mistake, we assume for purposes of our analysis that trial counsel's representation fell below an objective standard of reasonableness. *See Aragon*, 114 Idaho at 760, 760 P.2d at 1176. Despite this assumption, however, Eddington has failed to establish prejudice. To establish prejudice, Eddington must show a reasonable probability that, but for his trial counsel's mistake, the outcome of the sentencing would have been different. *See Lafler v. Cooper*, 566 U.S. 156, 165 (2012) (explaining prejudice standard extends to sentencing); *see also Richman v. State*, 138 Idaho 190, 194, 59 P.3d 995, 999 (Ct. App. 2002) (requiring evidence court would have ordered different sentence to show deficient performance prejudiced defendant).

Eddington failed to make this showing. As the district court noted, trial counsel's failure to mention the lack of prior physical abuse does not overshadow the gravity of Eddington's offense and the related facts, including that he held his ex-wife at gunpoint for over an hour, threatening to kill her; contemplated the crime over a course of time; and, before his crime, reviewed "gruesome photos of head wounds" and conducted Internet searches of "gunshot wounds" and of "murdered wives." Relying on these facts, the district court concluded Eddington would have received the same sentence, regardless of the audiotapes of his ex-wife's

police interviews.[1]  This conclusion is supported by the evidence, and we agree trial counsel's failure to object to the testimony of Eddington's ex-wife and to cross-examine her did not prejudice Eddington.

## IV.

## CONCLUSION

Eddington did not meet his burden of proving ineffective assistance of counsel. Therefore, the district court's order denying Eddington's petition for post-conviction relief is affirmed.

Judge HUSKEY and Judge LORELLO **CONCUR**.

---

[1]  Eddington failed to present records at the evidentiary hearing of his phone calls, emails and texts to his ex-wife.  As a result, they are not in the appellate record.  In their absence, we presume they support the district court's decision. *See State v. Repici*, 122 Idaho 538, 541, 835 P.2d 1349, 1352 (Ct. App. 1992) ("[M]issing portions of the record are presumed to support the action of the district court.").